UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

WILLIAM BLAINE MAYFIELD,

    Petitioner,

    v.

TOM CAREY, Warden, *et al.,*

    Respondents.

NO. CV-07-346-RHW

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Petitioner's Petition for Writ of Habeas Corpus, 28 U.S.C. Section 2254 (Ct. Rec. 1). Petitioner is a state prisoner currently confined by the California Department of Corrections in Vacaville, California. Petitioner is proceeding *pro se*. The State of California is represented by Jessica Blonien.

Petitioner challenges the Board of Parole Hearings' denial of parole on March 22, 2005. In his Petition, Petitioner is asserting eight claims for relief: (1) the participation of the Attorney General in the parole hearings denied Petitioner a fair hearing; (2) the decision to deny parole was arbitrary because there is no evidence that Petitioner is a danger or threat to society; (3) Petitioner was denied parole due to the circumstances of the commitment offense; (4) the Parole Board considered factors that were not proven before a jury and for which Petitioner was acquitted; (5) Petitioner's sentence is excessive, oppressive, and cruel and unusual; (6) the Parole Board re-characterized Petitioner's commitment offense as First Degree Murder, even though he was acquitted of this charge; (7) the decision to

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 1**

deny parole was due, in part, to collusion within the California Executive branch; (8) Petitioner's sentence is disproportionate to that of similar crimes and terms, in violation of the Equal Protection clause of the United States Constitution.

## PROCEDURAL AND FACTUAL BACKGROUND

Petitioner was convicted by a jury of second degree murder in 1985. On December 20, 1985, he was sentenced in the Mendocino County Superior Court to fifteen years to life, with the possibility of parole, plus a two-year determinate, consecutive enhancement for the use of a firearm.

In June, 1995, Petitioner appeared before the Board for his initial parole consideration hearing, and he was found unsuitable for parole at that hearing. His second parole consideration took place in July, 1998. He was again found unsuitable for parole and was denied parole consideration for three years. In 2000, Petitioner filed a Petition for Writ of Habeas Corpus in the Mendocino County Superior Court, which was granted. Later that year, the Board conducted a parole consideration hearing, pursuant to the court order, but found Petitioner unsuitable for parole. Petitioner filed another habeas petition, and in December, 2001, the Superior Court granted the petition, finding that the Board's decision to deny parole was arbitrary and capricious and a violation of Petitioner's substantive procedural and due process rights. The Court ordered the Board to conduct a new parole hearing and find Petitioner suitable for parole. In accordance with the Superior Court's order, the Board held another parole consideration hearing in April, 2002, and this time, found Petitioner suitable for parole. In August, 2002, however, then-Governor Gray Davis found Petitioner unsuitable for parole and reversed.

A fourth parole consideration hearing was held on June 24, 2003. The Board denied parole. A fifth parole consideration hearing was held on March 22, 2005. Parole was denied for one year. The sixth parole consideration hearing was held on July 19, 2006, and parole was denied for one year. The denial of the

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 2**

March 22, 2005 parole hearing is the subject of this petition. On October 18, 2006, the Supreme Court of California summarily denied Petitioner's writ of habeas corpus.[1]

## STANDARD OF REVIEW

In order to succeed with his § 2254 petition, Petitioner must establish that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). Petitioner must also establish that his claims were adjudicated on the merits in state court proceedings and that the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). A determination of a factual issue made by the State court shall be presumed to be correct. § 2254(e). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

A state court's decision is "contrary to" clearly established federal law only where "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-24 (2000). There is an "unreasonable application" of clearly established federal law when a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. A state court decision can also involve an unreasonable application of clearly established precedent "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. The state court's

---

[1] Respondent admits that Petitioner has exhausted his state court remedies.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 3**

error must be one that the habeas court concludes is objectively unreasonable, not merely erroneous or incorrect. *Id.* at 409-11.

Recently, the Ninth Circuit set forth the law that governs the determination of federal habeas claims in which a California prisoner asserts that he was denied parole in the absence of "some evidence. *See Pearson v. Muntz*, 606 F.3d 606 (9th Cir. 2010). In that case, the Circuit, relying on *Hayward v Marshall*, 603 F.3d 546 (9th Cir. 2010), instructed federal courts to examine the reasonableness of the state court's application of the California "some evidence" requirements, as well as the reasonableness of the state court's determination of the facts in light of the evidence. Stated another way, compliance with the state requirement is mandated by federal law and specifically by the Due Process Clause. *Id.* at 611. "Once a state creates such a system, however, it must operate it in a manner that comports with due process." *Id.*

State regulatory, statutory, and constitutional law shape the "some evidence" analysis. *Pirtle v. California Bd. of Prison Terms*, 611 F.3d 1015, 1021 (9th Cir. 2010). California law requires the Board to grant an eligible inmate a parole date unless the Board determines that "consideration of the public safety requires a more lengthy period of incarceration for this individual." Cal.Penal Code § 3041(b). The "overriding statutory concern" of the state's parole scheme is "public safety." *In re Dannenberg*, 104 P.3d 783, 795 (Cal. 2005). "'[S]ome evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." *Hayward*, 603 F.3d at 562.

California parole regulations set forth circumstances that may indicate unsuitability for release. Cal. Code Regs. tit. 15, § 2402(c). These circumstances include the aggravated nature of the commitment offense, a previous record of violence, an unstable social history, sadistic sexual offenses, a history of severe mental problems related to the offense, and serious misconduct in jail. *Id.* The regulations also identify circumstances that "tend to show suitability" for parole,

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** ~ 4

including the lack of a juvenile record, a stable social history, signs of remorse, significant stress as a motivation for the crime, lack of criminal history, realistic plans for the future, and good institutional behavior. *Id.* § 2402(d).

While the regulatory factors are designed to guide the Board's decision, the ultimate question of parole suitability remains whether the inmate poses a threat to public safety. "There must be 'some evidence' of such a threat," *Hayward*, 603 F.3d at 562, and not merely evidence that supports one or more of the Board's subsidiary findings. *Pirtle*, 611 F.3d at 1021. In particular, the Board may not rely solely on the circumstances of a commitment offense, because "[t]he prisoner's aggravated offense does not establish current dangerousness 'unless the record also establishes that something in the prisoner's pre-or post-incarceration history, or his or her current demeanor and mental state' supports the inference of dangerousness." *Hayward*, 603 F.3d at 562. (citations omitted).

### THE PANEL'S FINDINGS

In denying parole, the panel found that the December 14, 2004 psychosocial evaluation was the big stumbling block. The psychologist's report indicated that Petitioner would be a danger to society if he resumed drug and alcohol abuse. The panel considered the opposition to parole by the victim's family and the Deputy Attorney General. The panel found that Petitioner posed an unreasonable risk of danger to society and threat to public safety if released from prison, given the nature of the offense and the manner in which it was carried out. Specifically, the panel found that the offense was carried out in a manner that showed a total disregard for human suffering. The panel concluded that there were two victims, given that his ex-wife was in the room. The panel noted that Petitioner had failed to profit from society's previous attempts to correct his criminality with respect to his DMV violations, including adult probation and county jail, although it noted that Petitioner did not have prior criminal history. The panel relied on the fact that Petitioner had significant alcohol and drug use, including methamphetamine and

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 5**

cocaine. The penal noted that there was a certain amount of stalking or tracking conduct. The panel was concerned about Petitioner's sense of disconnect and what it believed was Petitioner's failure to come to grips with the commitment offense, and specifically what led up to the commitment offense.

The panel also indicated that Petitioner should be commended with respect to the amount and extent of programming in which he has participated. He received a Bachelor of Science from the University of Davis. He acquired four trades and worked for PIA optical. He was a disciplinary clerk, a teacher's assistance, clerical support services, a porter, a Chaplain's clerk, and computer clerk. The panel noted that he was involved in culinary and academics. He had taken 20 FEMA courses and been involved in AA and NA, Insight and Anger Management workshop. He received exceptional work performances and facilitated numerous programs and courses. Notably, since he has been incarcerated, Defendant has never received any CDC 115s or 128s. In other words, he has been disciplinary-free for the entire time he has been incarcerated.

Even so, the panel issued a one-year denial. In doing to, the panel indicated that this decision was based on the commitment offense and the psychologist's report.

### PETITIONER'S CLAIMS

**1.  Claim One: Denial of Due Process Rights by Deputy Attorney General's Presence at Parole Hearing**

Petitioner argues that he was denied his due process rights because the California Penal Code barred the Attorney General's participation in the Parole Board Hearing. He asserts three arguments: (1) the Court should enforce the language of Section 3041.7 of the California Penal Code and find that the Attorney General is prohibited from representing the State during the Board of Parole Hearing; (2) the Superior Court does not have jurisdiction over the matter; and (3) the Attorney General should be barred from representing the State in Board of

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 6**

Parole hearings because of a conflict of interest.

Federal habeas relief is not available for violations of state law, or for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Moor v. Palmer*, 603 F.3d 658, 661 (9th Cir. 2010). Insofar as this claim relies on purported violations of state law, it is not cognizable on federal habeas review.

**2.     Claim Two: Denial of Due Process Rights when California Parole Authority Denied Parole without Evidence to Support Decision**

As stated, having served his initial sentence, the petitioner is entitled to parole unless he is found to be dangerous to public safety.

Petitioner asserts that there was not sufficient evidence of dangerousness to public safety to deny him parole. He specifically claims that the Board relied primarily on his commitment offense and opinions of Dr. Van Couvering not supported by the record. When the record is properly reviewed, he claims that there is not evidence of danger. This Court will look at each of the items relied upon by the Board in denying parole.

In her December 14, 2004 report, Dr. Van Couvering concluded that if Petitioner was sober, he could maintain his present level of good socialization and not present a danger to the community at large, unless he relapsed into substance abuse. She opined that there was no way to predict which way he would go under the radical change of circumstances that parole would bring. Dr. Van Couvering's finding that the petitioner was not dangerous unless he relapsed into substance abuse supports the granting of parole. There is nothing in the record that supports using prison to prevent substance abuse of an otherwise rehabilitated prisoner where the substance abuse was 20 years ago and the old substance abuse has been addressed satisfactorily by the prisoner. There is nothing in the evidence presented that suggests Petitioner still has a substance abuse or drinking problem, or that he is likely to develop such a problem if he were released. Recently, the Ninth Circuit

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 7**

held that evidence of alcohol use or controlled substance uses twenty years prior does not support an inference that Petitioner is dangerous twenty years later. *See Johnson v. Finn*, 2010 WL 3469369 (9th Cir. Sept. 3, 2010).[2] On the contrary, the evidence in the record is that Petitioner has extensively programmed and addressed his substance abuse issues.

     Secondly, Dr. Van Couvering expressed concern that Petitioner tended to externalize the control of his own behavior and failed to identify strategies within himself that would prevent his relapse. This statement is conclusory and without foundation. Presiding Commissioner Daly pointed out that Dr. Van Couvering did not provide any supporting evidence for her conclusion and that her assessment was at odds with the previous assessments beginning in 1998 where the doctors found him to be a good candidate for parole. The Court agrees.

    Her statement is also at odds with the Petitioner's testimony at the hearing where he provided specific strategies that he would use to prevent any relapse. At the hearing, when questioned what insight and tools he gained to prevent him from reoffending, Petitioner identified strategies such as relaxation techniques, meditation, following the 12-Steps, and taking care of whatever is the issue rather than letting it escalate to anger, rage and violence. He indicated that he would step back from a situation, evaluate it, disengage, and take a full assessment based on a realistic view, rather than escalating the situation. He identified tools that he would use today that would help him deal with his stress, including positive self-talk,

---

[2] In *Johnson*, the Ninth Circuit reversed the district court's denial of the habeas petition with instructions to grant the writ. *Id.* at *1. The Circuit noted that Johnson admitted at his parole hearing that he had a drinking problem at the time of the murder, and the only evidence of drug use was his testimony that he had experimented with marijuana when he was 12 or 13 years old. *Id.* The Circuit held that such evidence of alcohol and drug use did not support an inference that Johnson was dangerous thirty years later. *Id.*

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 8**

getting a drink of water, or taking a deep breath.

Moreover, Dr. Van Couvering's conclusions are in direct contrast to the evaluation of December 2003 by Dr. John Rouse that indicated that Petitioner has developed an insight and understanding of his life crime and explored appropriately the reasons and causes of his behavior.

Third, in his comments, Deputy Commissioner Smith stated that he believed that Petitioner had failed to come to grips with the commitment offense, that is, what led up to the commitment offense and the effect of the commitment offense. According to Smith, Petitioner stated when questioned that he went to the trailer because his ex-wife had taken things from him, and from this statement, Petitioner was attributing some of the blame for what happen to someone else, namely his ex-wife.

The Court has reviewed Petitioner's testimony at the hearing, and concludes that Smith mischaracterizes Petitioner's testimony and fails to account for additional insight that was provided by Petitioner at the hearing.  For instance, Petitioner indicated that at the time of the murder, he was very self-centered and had a controlling nature.  The world revolved around him.  He acknowledged that he took steps to escalate the situation.  He testified that he went to the trailer to confront his ex-wife who had not been truthful about her relationship with the victim, even though his ex-wife had been periodically staying with the Petitioner while they were separated.  Petitioner testified that he knew that the victim carried a loaded weapon with him at all times.  He acknowledged that he was stressed about the relationship with his ex-wife, and was angry and jealous.

Petitioner explained that when he entered the house he starting searching for things through the house.  Smith asked what he was searching for and Petitioner explained that he was looking for things that his ex-wife had taken.  He reported that she had a habit of taking his things when she would stay with him.  Contrary to Smith's interpretation, Petitioner never tried to use this as an excuse for going to the

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 9**

house. Rather, he was trying to explain what he was doing while he was in the house prior to shooting the victim. Petitioner admitted to escalating the situation once he confronted the couple. He jumped on the victim and as the victim was retrieving his revolver, Petitioner pulled the revolver out of his waistband and fired his gun. Upon questioning, Petitioner recognized that anger, jealousy, poor decision-making fueled by alcohol, drugs, self-centeredness and low self-esteem all caused him to act the way he did on that night.

Similarly, Smith's conclusion from the record is directly contradicted by Dr. Rouse's evaluation that in 2003 Petitioner had developed an insight and understanding of his crime and had explored appropriately the reasons and causes of his behavior.

Fourth, the panel cited the Petitioner's failure to be rehabilitated for DMV violations committed before the offense of commitment as evidence of current dangerousness. This conclusion is entitled to no weight. The record of rehabilitation of the petitioner since the offense of commitment is overwhelming and uncontested. The panel and professional witnesses were unanimous in praising the singular and successful rehabilitation efforts of Petitioner in prison. There is nothing in the record to establish the rehabilitation efforts extended by the state to the Petitioner in dealing with his DMV violations as a teenager. Even if there were, the current record is conclusive of rehabilitation.

Finally, the panel contended that current dangerousness is supported by the fact that the offense of commitment involved "a certain amount of stalking or tracking." Again, this conclusion relies on the offense of commitment and is contradicted by the jury verdict itself. If the offense had involved such conduct, the offense of conviction would likely have been murder in the first degree. The jury rejected this charge and convicted Petitioner of murder in the second degree. Given the overwhelming record of rehabilitation of the Petitioner, this conclusion does not add to the conclusion of dangerousness.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** ~ 10

In the end, there is nothing in the record that indicates that Petitioner poses a danger to the public if released. The panel relied on Petitioner's commitment offense to deny parole. However, as recent Ninth Circuit law has pointed out, this cannot be the sole reason to deny parole. Rather, there has to be something in the Petitioner's pre- or post-incarceration history, or his current demeanor and mental state that supports the inference of dangerousness. The panel relied on Petitioner's apparent lack of insight into the crime to support the inference of dangerousness, yet this conclusion is not supported by the record, and is, in fact, plainly contradicted by the record.

It is the reviewing court's job to consider "whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the government." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). "[T]here must be more than the crime or its circumstances alone to justify the Board's or the Governor's finding of current dangerousness." *Id.* Here, the Court has considered the full record and does not find that the record supports a finding of dangerousness. Consequently, the Court finds that the state court's denial of habeas relief was based on an unreasonable determination of the facts in light of the evidence and habeas relief is appropriate. As such, the Court grants Petitioner's habeas petition.

3. **Claim Three: Violation of Constitutional Rights when California Parole Authority Applied Interpretation of Vague Statute**

Petitioner argues that any interpretation of § 3401 *et seq.* that allows Petitioner to remain in custody is clearly "impermissibly vague in violation of the due process clause of the Federal Constitution's fourteenth amendment."

A statute or regulation is unconstitutionally vague "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement." *United States v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989). The Due Process Clause, however, does not require

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 11**

the same precision in the drafting of parole release statutes as is required in the drafting of penal laws. *Hess v. Board of Parole and Post-Prison Supervision*, 514 F.3d 909, 913-14 (9th Cir. 2008).

Here, Petitioner argues that the use of the terms "a very cruel and a very callous crime" permits the Board to "mouth stock phrases" and then make arbitrary decisions to deny parole without regard to the crime of which Petitioner was convicted, the time served, or the lack of evidence indicating any current danger to society.

Section 3041(b) provides, in relevant part, that the Board shall set a parole release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration. Cal. Penal Code § 3041.

Where speech is not the explicit subject of a statute or regulation and is not otherwise implicated in the case, and if related constitutional rights are not expressly invoked in a challenge to facial validity, the court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute or regulation, the conduct in question is prohibited. *U.S. v. Hogue*, 752 F.2d 1503, 1504 (9th Cir.1985). Under these principles, the reviewing court need not address whether the prohibition may be vague or over broad in its other potential applications. *Id.* A criminal sanction is not vague if it provides fair notice of the conduct proscribed. *Id.* A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the rule in question. *Id.*

Petitioner fails to address Cal. Code Regs. tit. 15, § 2402(c), (d), which sets forth circumstances tending to show unsuitability as well as circumstances tending to indicate suitability. The factors set forth in § 2402 provide the standards by

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 12**

which the Board determines whether the timing and gravity of the current offense is such that consideration of public safety requires a more lengthy period of incarceration.  Reading § 3401(b) and § 2402(c) and (d) together, a reasonable person of ordinary intelligence would understand the standards for parole eligibility.  The statute therefore at issue is not unconstitutionally vague.

4. **Claim Four: Violation of Fifth, Sixth, Seventh, and Fourteenth Amendments by California Parole Authority's Use of Facts Not Found True by Jury**

Petitioner argues that the Board has increased his term of incarceration based on wild accusations never proven, or even placed, before the jury.  Petitioner argues that the Board is prevented from concluding that he committed a "very cruel and a very callous crime" because the jury never made such findings.  Likewise, Petitioner asserts that the jury did not convict him of stalking.  Petitioner asserts that *Blakely v. Washington*[3] prevents the panel from relying on facts not found true by a jury.

Petitioner's argument is without merit because the Board did not increase his sentence beyond the statutory maximum of life imprisonment for his crime of second degree murder.  *Cf. United States v. Booker*, 543 U.S. 220, 224 (2005); *Duesler v. Woodford*, 2008 WL 681060 (9th Cir. Mar. 10, 2008).

5. **Claim Five: Cruel and Unusual Punishment**

Petitioner argues that the denial of his parole violates the Constitution's prohibition against cruel and unusual punishment.  Petitioner does not cite to any case law in support of his arguments.

Successful Eighth Amendment challenges to the proportionality of particular sentences are "exceedingly rare."  *Solem v. Helm*, 463 U.S. 277, 289-290 (1983).  The Supreme Court has held that the Eighth Amendment does not require strict proportionality between crime and sentence; rather, it prohibits "extreme sentences

---

[3] 542 U.S. 296 (2004).

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS ~ 13**

that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring) (*citing Solem* ); *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (two consecutive twenty-five years to life sentences with the possibility of parole did not amount to cruel and unusual punishment); *Ewing v. California*, 538 U.S. 11 (2003) (holding that a sentence of twenty-five years to life imposed for felony grand theft under California's Three Strikes law did not violate the Eighth Amendment); *United States v. Bland*, 961 F.2d 123, 128 (9th Cir. 1992) (upholding a life sentence without possibility of parole for being a felon in possession of a firearm where defendant had an extensive criminal record).

Here, Petitioner was convicted of second degree murder that was committed in a cruel manner. Applying the standard as set forth above, petitioner's sentence is not grossly disproportionate to this crime.

**6.    Claim Six**: **Violation of Double Jeopardy Clause**

Petitioner argues that by finding him unsuitable for parole, the Board has essentially punished him as if he were guilty of first degree murder in violation of the Double Jeopardy Clause.

The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. DeFrancesco*, 449 U.S. 117, 129 (1980) (citation omitted). "The Clause protects only against the imposition of multiple criminal punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997).

Petitioner's claim fails because the Board's decision did not subject him to either a second criminal prosecution or to multiple punishments for the commitment offense. *See Williams v. Bd. of Prison Terms*, 2007 WL 4163387 (9th Cir. Nov. 26, 2007).

**7.    Claim Seven: Violation of Due Process rights By Collusion by California Parole Authority and Executive Branch**

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** ~ 14

Petitioner argues that the Board conspired with the Attorney General to introduce unreliable and irrelevant information in an effort to avoid making "an adjudication on the basis of merit." There is nothing in the record to support Petitioner's claim.

**8.  Claim Eight**: **Violation of Equal Protection Rights**

Petitioner asserts that he is being denied benefits of his behavioral credits in violation of the Equal Protection Clause of the Fourteenth Amendment. Petitioner argues that he is a member of the class of prisoners serving term-to-life sentences and he is similarly situated to all convicted felons in California.

To prove an equal protection claim, the petitioner must show that he was intentionally treated differently from others similarly situated and there was no rational basis for the differing treatment. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Petitioner has not established that his equal protection rights were violated.

**9.  Conclusion**

The Court concludes that Petitioner's Due Process rights were violated because the Board's determination of parole unsuitability was not supported by any evidence in the record.

 In a similar case affirming the district court's granting of habeas relief where the Board's decision to deny parole was not supported by sufficient evidence of current dangerousness, the Ninth Circuit recently held that, under such circumstances, it was proper for the district court to order the Board to set a parole date for the petitioner within thirty days, rather than remand the matter to the Board for a new hearing. *See Pirtle v. California Board of Prison Terms*, 611 F.3d 1015, 1025 (9th Cir. 2010); *see also Rico v. Curry,* 2010 WL 3081297 (N.D.Cal. Aug. 6, 2010) (noting futility of remanding case to Board where federal court finds evidence insufficient to sustain Board's unsuitability determination; ordering Board to find petitioner suitable for parole, calculate parole term and set release date);

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** ~ 15

*Opalec v. Curry*, 556 F. Supp.2d 1036, 1045 (N.D.Cal. 2008) (same).

In *Pirtle,* the Circuit also noted that the Governor's power to review parole decisions under California Penal Code § 3041.1 does not compel a delay in setting Petitioner's release date because the scope of the Government's review is limited to the materials presented to the Board.  611 F.3d 1025, n.10.  This Court's finding that the Board's decision was not supported by "some evidence" would render a remand to the Government an act in futility.  *Id.*

In its response, the State asserts that if the petition is granted, Petitioner's remedy is limited to a new parole review by the Board that comports with due process.  However, based on the Circuit's reasoning in *Pirtle,* this is not true.  Rather, where, as here, the Board's decision to deny Petitioner parole is not supported by "some evidence" of current dangerousness, the proper remedy is to order the Board to set a parole date within thirty days.  *Pirtle*, 611 F.3d at 1026.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Petition under 28 U.S.C. 2254 for Writ of Habeas Corpus by a Person in State Custody (Ct. Rec. 1) is **GRANTED**.

2.   The District Court Executive is directed to enter Judgment in favor of Petitioner, and against Respondent, as follows:

> The Board shall find Petitioner suitable for parole at a hearing to be held within 30 days from the date of this decision and shall calculate a prison term and release date for Petitioner in accordance with California law.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel and petitioner.

**DATED** this 5th  day of October, 2010.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** ~ 16

C:\WINDOWS\Temp\notes101AA1\grantRHW.wpd

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** ~ 17